IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| THOMAS TRAUMANN | : | No. 18-564 |

**MEMORANDUM**

PRATTER, J.                                                                                                FEBRUARY 21, 2023

Thomas Traumann has filed a *pro se* Omnibus Motion, purportedly under 28 U.S.C. § 2241,[1] requesting that the Court enter judgment of acquittal and order his immediate release. Because Mr. Traumann entered into a waiver of his right to appellate and collateral review knowingly and voluntarily, and his case does not present a miscarriage of justice, the Court denies the motion for the reasons stated below.

### BACKGROUND

Mr. Traumann sent lewd text messages to an undercover federal agent posing as a 14-year-old girl. Later, Mr. Traumann crossed state lines to meet up with the "girl" for a sexual encounter, where he was arrested.

Mr. Traumann was charged in a two-count indictment with use of an interstate commerce facility to entice a minor to engage in sexual conduct, in violation of 18 U.S.C. § 2422(b) (Count

---

[1] Section 2241 provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Most often, however, the only "route for collateral review of [a prisoner's] conviction or sentence is under § 2255." *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 178 (3d Cir. 2017). A petitioner may rely on § 2241 only if § 2255 is not adequate to challenge his detention. *Id.* Because Mr. Traumann has not established that § 2255 is inadequate or ineffective for testing the legality of his current detention, the motion is more appropriately brought under 28 U.S.C. § 2255, and the Court will analyze Mr. Traumann's claims accordingly.

1

One); and interstate travel with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) (Count Two).

Mr. Traumann entered a plea of guilty to Count Two. He was represented by counsel prior to and at the plea hearing. During his plea colloquy, Mr. Traumann admitted to traveling from Delaware to Pennsylvania on November 5, 2018, to meet with a person he believed to be 14 years old to engage in sexual conduct with her.

Mr. Traumann signed a guilty plea agreement, which included a provision that waived Mr. Traumann's rights to appeal or collaterally attack his conviction, except in a limited set of circumstances, including if he received a sentence in excess of the statutory maximum for Count Two or if his attorneys provided constitutionally ineffective assistance of counsel. The Court conducted a thorough and extensively detailed review of the plea agreement with Mr. Traumann, reiterating the limitation on his rights to appeal and collateral attack. Following the colloquy, the Court found Mr. Traumann's guilty plea to be knowing, voluntary, and intelligently made. The Court accepted the plea agreement and subsequently concluded that Mr. Traumann had earned a sentence of 99 months' imprisonment, 10 years of supervised release, a $5,000 fee pursuant to the Justice for Victims of Trafficking Act, a $25,000 fine, and a $100 special assessment.[2]

Mr. Traumann has filed an "omnibus motion" seeking relief and judgment of acquittal, challenging his conviction on several grounds. First, he argues that he was intoxicated at the time of his plea colloquy. Second, Mr. Traumann avers that there was no factual basis to accept his plea. Third, he contends that an amendment to 18 U.S.C. § 2423(b) changed the statutory language concerning the *mens rea* of the crime from "for the purpose of" to "with a motivating purpose," thereby creating a defect in the prosecution of his case. Fourth, he alleges that the case agent and

---

[2] Per the plea agreement, the Government agreed to dismiss Count One at sentencing. The statutory mandatory minimum sentence under that count was 120 months.

2

prosecutor assigned to his case worked together to entrap Mr. Traumann and similar defendants to advance their careers. The Government argues that Mr. Traumann's waiver was knowing and voluntary and there is no miscarriage of justice, such that the Court must dismiss the post-sentencing petition.

## LEGAL STANDARDS

A prisoner in federal custody "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Such relief "is generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

When a defendant moves to vacate his sentence under 28 U.S.C. § 2255, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005). When the defendant is proceeding *pro se*, his filing is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A court may, however, dispose of "vague and conclusory allegations contained in a § 2555 petition" without investigation. *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). Although an evidentiary hearing should be held if the case's record is not conclusive as to whether the petitioner is entitled to relief, a court "may summarily dismiss a § 2255 motion where the motion, files, and records 'show conclusively that the movant is not entitled to relief.'" *United*

3

*States v. Mason*, No. 04-cr-720, 2008 WL 938784, at *1 (E.D. Pa. Apr. 4, 2008) (quoting *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).

## DISCUSSION

### I. Mr. Traumann's Waiver Was Knowing and Voluntary

Criminal defendants may "knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution" via plea agreement. *United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) (quoting *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)). When considering the validity of a waiver, a district court should examine (1) the knowing and voluntary nature of the waiver, based on the defendant's allegations and on what actually occurred and (2) "whether enforcement would work a miscarriage of justice." *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008), *abrogated on other grounds by Garza v. Idaho*, 139 S. Ct. 738, 744 (2019). "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Id.* at 237–38.

During Mr. Traumann's change of plea colloquy, the Court confirmed that Mr. Traumann had not taken drugs apart from medicine prescribed by a licensed physician in the 48 hours prior to the hearing, had not consumed alcoholic beverages in the last 24 hours, and had never had any kind of mental illness or drug or alcohol addiction. Oct. 5, 2020 Change of Plea Hr'g Tr. at 11:6–12:10. The Government summarized the terms of the plea agreement for the record, including Mr. Traumann's agreement that "his rights to appeal and to collaterally attack this conviction, should it be accepted, are largely limited" and he "may only appeal or file a direct appeal if the sentence is set at an amount greater than statutory maximum; if there's an upward departure or variance applied in the case; and

4

finally, he does not waive either in a collateral attack motion or on appeal the ability to challenge that his attorney was ineffective throughout his or her representation of him." *Id.* at 17:25–18:11. Mr. Traumann affirmed on the record that the Government had summarized the plea agreement consistent with his understanding of the terms. *Id.* at 18:19–21. The Court then reiterated that Mr. Traumann would be limited in his appellate rights to the following scenarios, if he were to plead guilty: "if the Court were to impose a sentence that was unreasonably above the guidelines," "[i]f the Court were to sentence [him] to a sentence that was not authorized by statute," and "if [his] lawyer . . . failed to provide services that meet the constitutionally required minimum standard." *Id.* at 26:21–27:14. Mr. Traumann verbally confirmed his understanding of the waiver of appellate rights. *Id.* at 26:5–27:25. The Court found Mr. Traumann to be "fully alert, . . . competent, and . . . capable of changing his previous plea and entering an informed plea . . . and his plea of guilty is knowing, voluntary, and intelligently made." *Id.* at 43:8–17.

In his pending motion, Mr. Traumann alleges that he was so intoxicated for the change of plea hearing that his guilty plea was not entered knowingly and voluntarily. However, his in-court statements carry a presumption of truth while the allegations in his motion do not, and the in-court statements must "stand in the absence of evidence of misunderstanding, duress, or misrepresentation in his entering the plea." *United States v. Gale*, No. 19-cr-12, 2022 WL 17821615, at *3 (W.D. Pa. Dec. 20, 2022) (citing *Blackledge v. Allison*, 431 U.S. 63, 73–75 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.")). Mr. Traumann offers no evidence to support his contention that he was under the influence of alcohol during, as he now contends, most of the hearings held before this Court, including his change of plea hearing. In light of the findings of the Court at the

5

change of plea hearing and the representations of all relevant parties present on that occasion, Mr. Traumann's unsupported claims are "in the face of the record . . . wholly incredible" and "subject to summary dismissal." *Blackledge*, 431 U.S. at 74.

## II. Enforcement of Mr. Traumann's Waiver Does Not Result in a Miscarriage of Justice

Holding Mr. Traumann to his knowing and voluntary waiver does not result in a miscarriage of justice. The miscarriage of justice exception is meant to be "applied sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005). In determining whether a miscarriage of justice will occur, the Court considers:

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Khattak*, 273 F.3d at 563.

Mr. Traumann's claims lack merit and do not thrust this case anywhere close to the scope of the narrowly circumscribed miscarriage of justice exception. First, Mr. Traumann argues that there is no factual basis to support his guilty plea. The transcript of his change of plea hearing plainly contradicts Mr. Traumann's contention because the Government listed the facts through which it would prove at trial that Mr. Traumann "traveled in interstate commerce" and that his "purpose in traveling in interstate commerce was to engage in illicit sexual conduct with a person he believed to be a minor." Oct. 5, 2020 Change of Plea Hr'g Tr. at 29:16–32:22. Mr. Traumann agreed immediately thereafter that the Government had accurately summarized the facts, and he admitted to those facts. *Id.* at 33:1–16. Mr. Traumann's acquiescence to the facts underlying his guilty plea is inescapable.

6

Second, the change in the statutory language of 18 U.S.C. § 2423(b) following the indictment does not constitute any meaningful defect in the prosecution. As Mr. Traumann concedes, the change to the statutory language, which amended the statute such that a defendant could be convicted if he traveled in interstate commerce "with a motivating purpose" to engage in illicit sexual conduct, post-dated his indictment. 18 U.S.C. § 2423(b).[3] Moreover, Mr. Traumann agreed at his guilty plea hearing that "he drove from Wilmington, Delaware to Audubon for the purpose of picking up the minor female to have oral sex with her." Oct. 5, 2020 Change of Plea Hr'g Tr. at 32:9–11. These facts are sufficient to establish guilt both under the previous § 2423(b) statutory language and the less stringent *mens rea* contained in § 2423(b) as subsequently amended. *See, e.g., United States v. Davis*, 985 F.3d 298, 304 (3d Cir. 2021) (finding "ample evidence" for a jury to conclude that a defendant, who had traveled from New York to Pennsylvania believing he was meeting a minor to engage in sexual conduct, had the requisite criminal intent under § 2423(b) as amended).

Finally, Mr. Traumann claims that the case agent and prosecutor assigned to his case have engaged in misconduct by arresting other defendants for similar crimes in an effort to advance their careers. Not only are these allegations merely conclusory, but Mr. Traumann agreed at his change of plea hearing that he had waived "any challenge to the manner by which [he was] arrested," "the circumstances leading up to that event," and "the government's method of investigating [him], [his] conduct, or gathering up evidence against [him]." *Id.* at 21:4–24.

The impact on the Government of correcting any of these alleged errors would be significant. The Government might be forced to relitigate a case with an indictment filed in 2018.

---

[33] Accepting momentarily Mr. Traumann's claim that the change of language in § 2423(b) following his indictment would be favorable to him, "[t]he possibility of a favorable change in the law occurring after a plea agreement is merely one of the risks that accompanies a guilty plea." *United States v. Lockett*, 406 F.3d 207, 214 (3d Cir. 2005).

More generally, finding a miscarriage of justice in these circumstances "would eschew the finality and gatekeeping requirements of § 2255, allowing more prisoners an alternative and additional route to challenge the propriety of their sentences," *Mabry v. Shartel*, 632 F. App'x 707, 711 (3d Cir. 2015), and "corrupt[ing] the bargain struck between the Government" and Mr. Traumann. *United States v. White*, No. 09-cr-262-2, 2018 WL 2734857, at *3 (M.D. Pa. June 7, 2018).

Given the frivolous character of Mr. Traumann's claims, his acquiescence to the waiver of his appellate rights at his change of plea hearing, and the potential hardship that would result on the Government, the enforcement of the waiver will not result in a miscarriage of justice, and the waiver is valid.

### III. No Certificate of Appealability Will Issue

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). A petitioner must make "a substantial showing of the denial of a constitutional right" for a certificate of appealability to issue. 28 U.S.C. § 2253(c)(2). The district court will issue the certificate if the prisoner has demonstrated "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Reasonable jurists reading the transcript of the plea hearing would not find the Court's ruling on Mr. Traumann's motion debatable, so no certificate of appealability shall issue.

8

## CONCLUSION

For these reasons, the Court denies Mr. Traumann's Omnibus Motion. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE